## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| RMD, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-2056-JAR-DJW |
| | ) | |
| NITTO AMERICAS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. 368) on Plaintiff's claim for punitive damages (Count VIII) of its Second Amended Complaint.  The matter is fully briefed and the Court is prepared to rule.  For the reasons explained in detail below, Defendants' motion is denied.

### I.    Background

On March 14, 2012, an Amended Scheduling Order was entered in this case (Doc. 269). In that Order, Magistrate Judge Waxse determined that, in light of his order granting Plaintiff RMD, LLC leave to amend to add a claim for punitive damages, discovery and other deadlines would be extended.  Specifically, Judge Waxse established a dispositive motions deadline of June 15, 2012, for "motions related to punitive damages claim."  Subsequently, on March 27, 2012, the Court denied in part Defendants Nitto Americas, Inc. and Permacel, Inc.'s pending Motion for Summary Judgment on all of Plaintiff's claims (Doc. 278), granted Defendants' motion with respect to the issue of expiration of the Distributorship Agreement and denied the motion with respect to all remaining claims and affirmative defenses.  The Court also denied Plaintiff's Motion for Partial Summary Judgment with respect to Plaintiff's breach of contract

claim.

On June 18, 2012, Defendants filed a Motion for Summary Judgment and 158-page Memorandum in Support (Docs. 330, 331), which renewed Defendants' motion for summary judgment on all claims and affirmative defenses that were previously denied by this Court, as well as asserted a new request for summary judgment on Defendants' counterclaim and Plaintiff's punitive damages claim. The Court held that Defendants' motion exceeded the scope of this Court's order on summary judgment, which did not provide for leave to renew, as well as the Amended Scheduling Order, which clearly limits any dispositive motions to the punitive damages claim (Doc. 337). The Court denied Defendants' request to exceed the page limitation as unnecessary, as the majority of the issues in the memorandum were not properly before the Court, and exercised its discretion under Fed. R. Civ. P. 12(f)(1), to strike Defendants' Motion and Memorandum as immaterial and improperly filed before obtaining leave to exceed page limitations. Defendants were directed to refile their Motion and Memorandum in support on the limited issue of Plaintiff's claim for punitive damages on or before June 22, 2012.

Defendants complied, and filed a 110-page Motion for Summary Judgment (Doc. 345) on Plaintiff's punitive damages claim, effectively asking the Court to grant judgment in its favor because none of Plaintiff's underlying claims have merit and it is unable to establish actual damages. Defendants also asked the Court to reconsider its Order striking their original Motion for Summary Judgment in light of the discovery that had occurred since the filing of the first motion denied in March 2012. The Court held a hearing, at which time it denied Defendants' request, holding that it was the intent of both Judge Waxse and this Court to reopen discovery on the issue of punitive damages only, and that Defendants' motion was filed contrary to the

2

Amended Scheduling Order and without leave of Court (Doc. 364).  The Court gave Defendants yet another chance to amend their request for summary judgment to comply with the Court's directive to limit the motion to the issue of punitive damages, including marshaling the 365 statements of uncontroverted facts to support the issue of whether a reasonable jury could find from the record that Plaintiff had proved by clear and convincing evidence that Defendants acted willfully or wantonly.  This motion followed.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[5]

The moving party initially must show the absence of a genuine issue of material fact and

---

[1]Fed. R. Civ. P. 56(a).

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[12]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by

---

[6]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Adams*, 233 F.3d at 1246.

[12]Fed. R. Civ. P. 56(c)(4).

specific facts, or speculation.[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## III.    Discussion

Despite the Court's clear directive to marshal the facts relevant to Plaintiff's claim of punitive damages, Defendants' third incarnation seeking summary judgment persists in presenting 189 statements of fact relevant to most of Plaintiff's underlying claims, on the grounds that the claim for punitive damages does not stand on its own and is dependent upon the underlying claims.  Although couched as seeking dismissal of the punitive damages claim only, Defendants seek by implication a ruling in their favor on their interpretation of the Agreement, on the lack of any direct sales in violation of the Agreement, that indirect sales require knowledge under the Agreement, and that there are no recognizable damages or showing of causation.  While the Court appreciates Defendants' attempt to convey its version of the facts and circumstances of the case, it goes without saying that if the underlying claims are without merit or if there are no consequential damages awarded, there is no basis for punitive damages,

---

[13]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[14]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[15]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

5

and the Court will not revisit the issues denied in its previous Order in the context of ruling on the instant motion.  That said, the Court turns to the issue of punitive damages.

Defendants claim they are entitled to summary judgment on Plaintiff's punitive damages claim on essentially two grounds.  First, Defendants argue that the evidence, as a matter of law, mandates a finding that Defendants did not act in a willful or wanton manner.  Second, Defendants argue that even if Plaintiff had evidence of wanton conduct, punitive damages would still not be recoverable because there is no evidence that the alleged wanton conduct of Craig Lakian was authorized or ratified by anyone expressly empowered to do so as required by K.S.A. § 60-3702(d).

Under Kansas law, "[i]n any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice."[16]  "[T]o establish wanton or reckless conduct, there must be evidence to establish a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences."[17]  "'Wantoness' refers to the mental attitude of the wrongdoer rather than a particular act of negligence."[18] The determination that conduct is wanton is typically a question of fact for the jury.[19]  Only when reasonable persons

---

[16]K.S.A. § 60-3701(c).

[17]*Danaher v. Wild Oats Mkts., Inc.*, 779 F. Supp. 2d 1198, 1213-14 (D. Kan. 2011) (quoting *Willard v. City of Kansas City*, 681 P.2d 1067, 1069 (D. Kan. 1984)).

[18]*Stewart v. Mitchell Transport*, 241 F. Supp. 2d 1216, 1222-23 (D. Kan. 2002) (quoting *Gould v. Taco Bell*, 772 P.2d 511, 518 (Kan. 1986)).

[19]*Danaher*, 779 F. Supp.  2d at 1213-14 (citing *Gruhin v. City of Overland Park*, 836 P.2d 1222, 1225 (Kan. Ct. App. 1992)).

could not reach differing conclusions from the same evidence may the issue [of wantoness] be decided as a question of law."[20]

Plaintiff seeks punitive damages stemming from its fraud claims in Counts IV, V and VII of the Second Amended Complaint, which allege fraudulent inducement, fraudulent misrepresentation and fraudulent concealment.  Plaintiff contends that it is entitled to damages because Defendants actively sought to circumvent their obligations under the Agreement by creating a scheme to sell Exclusive Product to Plaintiff's competitors via third parties, including but not limited to selling to Second Skin, dB Acoustical, Design Engineering and ThermalSound Direct.  Plaintiffs contend that Defendants sold to dB Acoustics who then sold to Wholesale Banner, who then sold to retailer Second Skin, a competitor of Plaintiff.  After the agreed preliminary injunction was ordered, Plaintiff  discovered that Defendants sold the Exclusive Product to JBC Technologies, who in turn sold the product under the name ThermalSound Direct.  Plaintiff further contends that when Defendants learned how Second Skin's business had grown, they contacted its owner, Anthony Collova, and tried to find a "work around" to the Agreement, and proposed that Collova and/or Second Skin purchase the Exclusive Product from an overseas affiliate in order to circumvent the Agreement.  Collova testified that this exchange with Defendants occurred approximately twelve to eighteen months after he stopped buying from Lakian and Permacel, and during the effective period of the Agreed Order.  Collova did not go through with the sale because he thought the price for the Exclusive Product was too high.

Defendants have acknowledged that Exclusive Product was sold into the Exclusive Market, but argue that it was inadvertent and that Plaintiff has failed to establish willful and

---

[20]*Id.*

wanton conduct on behalf of Defendants that warrants continuation of a claim for punitive damages. Defendants argue that the alleged attempted circumvention with Collova did not result in any actual sales, does not give rise to a breach of contract, and thus does not support a claim for punitive damages.  Lakian disputes the accuracy and veracity of Collova's testimony and further avers that he was duped by Mike Demo at dB Accoustical, who in turn sold to Wholesale Banner and ultimately to Second Skin.  Lakian believed that Demo was purchasing product for the commercial bus industry.  Demo admitted in his deposition taken in May 2010 that he intentionally deceived Defendants in the ordering of Exclusive Product, claiming it was to be used in the bus market.

The Court finds that it is faced with disputed material facts that preclude summary judgment on the wantoness issue.  Plaintiff's claim for punitive damages is not based on its breach of contract claim but rather, its fraud claims.  While Lakian's alleged attempt at circumvention with Collova may not constitute a  breach of the Agreement, it is consistent with Plaintiff's allegations of fraud and is evidence of Defendants' state of mind regarding its intent to perform under the terms of the Agreement.  Although both parties' version of the facts is heavy on rhetoric, at this point, without having heard all the circumstances and the inferences that could arise from the evidence, the Court cannot say that a claim for punitive damages is barred as a matter of law.

Defendants' argument that Plaintiff cannot recover punitive damages because Lakian's alleged conduct was not authorized or ratified as required by K.S.A. § 60-3702(d) creates a more difficult question.  That statute provides that a corporation's liability for punitive damages for its employee's actions is limited to conduct authorized or ratified by a person expressly empowered

8

to do so on behalf of the principal or employer.[21]  The Kansas Supreme Court has explained that

> Authorization under the provisions of . . . § 60-3701(d)(1) may be either express or implied and generally is accomplished before or during the employee's questioned conduct.  It may be based on an express grant of authority or on a course of conduct indicating that the employee was empowered or given the right or authority to engage in the questioned conduct.  Ratification may be express or implied and may be accomplished before, during, or after the employee's questioned conduct.  It may be based on an express ratification or based on a course of conduct indicating the approval, sanctioning, or confirmation of the questioned conduct.[22]

Thus, in order for corporate liability for punitive damages to apply to Defendants in this case, Plaintiff must show that Lakian had authority to engage in the alleged wanton conduct and/or his conduct was ratified by Defendants based on a course of conduct indicating their approval of his questioned conduct.  While Defendants have consistently contended throughout these proceedings that Lakian denies Collova's version of what transpired and that he was lied to by Demo, their argument that he was not an employee or agent of Defendants is new and seemingly inconsistent with the record.  Indeed, it is uncontroverted that Lakian served as Director of New Business Development for Nitto Denko Automotive and thus interacted with Defendants' customers; he was previously employed with Permacel, which later changed its name to Nitto Denko Automotive.  Defendants now contend that Lakian was never an employee of Defendants and that Nitto Denko Automotive is not a party to the Agreement.  But, in granting Defendants summary judgment on the issue of termination of the Agreement, the Court

---

[21]K.S.A. § 60-3701(d)(1).

[22]*Smith v. Printup*, 866 P.2d 985, 1003 (Kan. 1993); *see also Stallings v. Werner Ent., Inc.*, 598 F. Supp. 2d 1203, 1215 (D. Kan. 2009).

cited to the letter from Brian Brace, Vice President and General Manager of Nitto Denko Automotive, notifying Tim McCarthy that the Agreement had been terminated.[23]  Given the inconsistent record on the nature and scope of Lakian's position and authority with Defendants, the Court finds that Defendants have failed to satisfy their summary judgment burden of demonstrating an absence of material facts surrounding Plaintiff's punitive damages claim.[24]  In so ruling, the Court recognizes that this question may surface again at trial on a motion for judgment as a matter of law under Fed. R. Civ. P. 50.  Accordingly, Defendants' motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 368) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Extension of Time to File Reply (Doc. 400) is moot.

**IT IS SO ORDERED.**

**Dated: November 7, 2012**

                                        **S/ Julie A. Robinson**

                                        **JULIE A. ROBINSON**

                                        **UNITED STATES DISTRICT JUDGE**

---

[23]*See* Doc. 241 at 20-24.

[24]*Celotex*, 477 U.S. at 325.

10